**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PATRICK MINELLA,**<br><br>Plaintiff,<br><br>v.<br><br>**ELECTRON MICROSCOPY SCIENCES,** *et al.*,<br><br>Defendants. | Civil Action No. 21 -15906-ZNQ-RLS<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint ("the Motion") by Defendants Electron Microscopy Sciences, Summers Optical, EMS Contract Packaging, EMS Acquisition Corp., Diaotome U.S., (collectively, "Corporate Defendants") and Stacie Kirsch (together with Corporate Defendants, "Defendants") pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 22.)  Defendants filed a Brief in Support of their motion. (Moving Br., ECF No. 22-1). Plaintiff Patrick Minella opposed the motion. (Opp'n Br., ECF No. 24.) Defendants filed a reply.  (Reply Br., ECF No. 29.)  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will GRANT the Motion.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

1

I.      **FACTUAL BACKGROUND** [2]

In 2012, Defendant Stacie Kirsch solicited Plaintiff to become an employee for Corporate Defendants as a sales representative throughout the United States. (Am. Compl. ¶ 9, ECF No. 18.) Defendant Kirsch made an express promise, via an oral agreement, that upon demonstrating his skillset as a salesman, Plaintiff would be transitioned from employee to an independent contractor sales representative whose pay would be based solely on commission. (*Id*. ¶ 9.) Defendant Kirsch represented that he would achieve "great wealth" following that transition. (*Id*.) At the time Plaintiff commenced his employment, he understood that Defendant EMS had an approximate annual gross sale revenue base of $2,000,000.00. (*Id*. ¶ 11).

At the end of three years of employment with Corporate Defendants, Plaintiff's record of sales growth and customer account expansion warranted his transition from employee to independent contractor. (*Id*. ¶ 13.) In December of 2015 Defendant Kirsch, on behalf of Corporate Defendants, entered into a revised oral agreement wherein Defendants classified Plaintiff as an independent contractor. (*Id*.)

From December 2015 through the first five months of 2021, Plaintiff worked as an independent contractor for Corporate Defendants. (*Id*.) Pursuant to the revised oral agreement, Defendant Kirsch, on behalf of Corporate Defendants, agreed Plaintiff would be paid the following percentages of the gross sales for any product purchases made by any of his account customers:

    a.  Chemicals – twenty (20%) percent of gross sales;

    b.  Consumables – ten (10%) percent of gross sales;

    c.  Equipment and other – five (5%) percent of gross sales.

---

[2] For purposes of this motion, this court will take all facts alleged in the Amended Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

(*Id*. ¶ 14). Defendants additionally paid various commission rates, from 1.5% upwards on low volume obscure items. (*Id*.) The bulk of Plaintiff's product sales were from the aforementioned categories a, b, and c.

The revised oral agreement between the parties did not indicate any costs or conditions that would have limited commission payments to Plaintiff on sales of the various product categories. (*Id*. ¶ 17.) The revised oral agreement additionally did not indicate that Defendants would alter the commission percentages. (*Id*.)

From December 2015 to March 2021, Defendant Electron Microscopy Sciences (EMS) and other named defendants utilized Plaintiff's services as an independent sales representative with respect to the sales of their chemical, consumable, and equipment products. (*Id*. ¶ 18.)

Following the revised oral agreement, Plaintiff received monthly account checks which on an annual basis always exceeded by 10–15% the amount of his commissions received from the same month in the prior year. (*Id*. ¶ 19.) Plaintiff never received a detailed written accounting of all sales for his exclusive customer accounts; he assumed the monthly checks from Defendants were accurate and correct as his efforts directly correlated with a large percentage of the company sales growth. (*Id*. ¶ 20.) Plaintiff was never provided with the exact amount of annual sales of the Corporate Defendants, particularly EMS. (*Id*.) Corporate Defendants were not public entities and were not represented on any public record document of which Plaintiff was aware. (*Id*.)

In February of 2020, Plaintiff noted for the first time that his commission check was less than the same month for the prior year. Defendant Kirsch explained that sales had decreased to such a level that the companies were in financial trouble. (*Id*. ¶ 21.)

Plaintiff approached Defendants' bookkeeper and inquired as to the sales representations made by Defendant Kirsch and his diminishing commission checks. (*Id*.) Plaintiff learned from

the bookkeeper that Defendants' product sales were robust. (*Id.*) Notably, due to the COVID-19 pandemic, sales in hand sanitizer were already in the millions of dollars. (*Id.*) Plaintiff also learned from his account customers that Defendants had been receiving purchase orders for PPE (Personal Protection Equipment) products and other products from Plaintiff's exclusive account customers and circumventing Plaintiff by diverting the sales commissions to which he was entitled. (*Id.*) Plaintiff also learned from the employee in charge of inventory that Corporate Defendants' inventory flow was as robust as ever. (*Id.*)

At the end of February/March of 2020, Plaintiff challenged Defendant Kirsch regarding the deficiencies in his commission payments given the information he received from the bookkeeper and the employee in charge of inventory. (*Id.* ¶ 22.) Plaintiff demanded Defendant Kirsch to provide a sales report for all his exclusive accounts to confirm the amount of product sales for 2020. (*Id.*) She refused. (*Id.*) Defendant Kirsch then dismissed Plaintiff from her office. (*Id.*) As Plaintiff left the office, he demanded the unpaid commissions.

On or about March 10, 2020, Plaintiff received a letter from a California attorney about his "decision to leave the company." (*Id.* ¶ 23.) Plaintiff contacted the attorney and denied ever having terminated his independent contractor services with Corporate Defendants. (*Id.*) Plaintiff then learned that a "gag order" was issued prohibiting all company employees and other independent contractor sales agents from providing any information to or speaking with him about any company matters. (*Id.* ¶ 24.) At no time did Defendant Kirsch nor any other Defendant notify Plaintiff of any intended change in the terms of his agreement. (*Id.* ¶ 25.)

Plaintiff then learned that in early 2021, Corporate Defendants were acquired by a third-party venture capitalist company. At that time, annual product sales by Defendant EMS were reported to be approximately $17,000,000.00. (*Id.* ¶ 26.) Plaintiff knew his efforts contributed to

4

EMS's growth and total annual product sales. (*Id*.)  As such, Plaintiff concluded that his commission was substantially below that to which he was entitled. (*Id*.)

## II. PROCEDURAL HISTORY

Plaintiff originally filed his complaint in the Superior Court of New Jersey, Ocean Vicinage, on July 20, 2021. On August 23, 2021, Defendants filed a notice of removal to the District Court of New Jersey. (ECF No. 1.) Defendants then filed a Motion to Dismiss Complaint on September 27, 2021 and October 25, 2021. (ECF No. 9, 13.) On October 26, 2021, Defendants filed a Motion to Strike Brief in Opposition. (ECF No. 14.)

The Court on November 15, 2021 granted Plaintiff's request to amend his complaint and terminated all pending motions. (ECF No. 17.) On November 16, 2021, Plaintiff filed an Amended Complaint alleging Defendants failed to pay him what he was owed under an agreement. (ECF No. 18). The Amended Complaint's five claims include allegations that Defendants' failure to pay Plaintiff constitutes Fraud (Count I) and Conversion (Count II). By the instant motion, Defendant seeks to dismiss Counts I and II entirely and to dismiss all claims against Defendant Kirsch.

## III. LEGAL STANDARD

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a

plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. at 679. In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus*, 641 F.3d at 563.

## IV. DISCUSSION

### A. Jurisdiction

The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse[3] and the matter in controversy exceeds a value of $75,000.

### B. Whether the Amended Complaint Adequately States a Claim for Fraud (Count I) or Conversion (Count II)

Defendants argue that Counts I and II should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Moving Br. at 3.) They contend that these fraud and conversion claims amount to nothing more than assertions that Plaintiff did not receive what he believes he was owed under the parties' agreement. (*Id*. at 3.) Therefore, the claims are prohibited by the "economic loss doctrine," which precludes tort liability for parties to a contract when the relationship between the parties is based on that contract, unless the breaching party owes an independent duty imposed by law, citing to *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297 (2002)

---

[3] The Court notes that while the Amended Complaint identifies Plaintiff as a New Jersey citizen and Corporate Defendants as Pennsylvania entities, it fails to identify the citizenship of Defendant Stacey Kirsch. Defendants' Notice of Removal, however, discloses her state of residency as Florida. (ECF No. 1 ¶ 6). Accordingly, the parties are diverse for the purposes of § 1332.

6

for support. (*Id*. at 4.) Defendants argue that Plaintiff has identified no independent duty in this case.

Plaintiff argues that the economic loss doctrine, and *Saltiel* in particular, do not apply because he has alleged that Defendants' conduct was intentional as opposed to negligent. (Opp'n Br. at 2.) Additionally, Plaintiff argues that "it is axiomatic" that for the economic loss doctrine to apply, parties must be in privity of contract. (*Id*.) Given that Plaintiff never had any direct privity of contract with Defendant Kirsch, Plaintiff argues that the economic loss doctrine cannot apply to his tort claims against her. Plaintiff also argues that the tortious conduct alleged against Defendant Kirsch includes fraudulent inducement, which occurred outside the contract, therefore the economic loss doctrine cannot bar his tort claims.[4] Plaintiff additionally argues that the economic loss doctrine does not apply because the implied covenant of good faith and fair dealing imposes a duty on Defendants outside the parties' agreement.

In reply, Defendants reiterate that the economic loss doctrine bars Plaintiff's fraud and conversion claims. (Reply Br. at 2). Defendants argue that the fraudulent inducement exception to the economic loss doctrine does not apply because the Amended Complaint does not allege that Defendants made any false representations prior to entering into the agreement. (*Id*. at 2–3).

Generally, a tort action is separate and distinct from a contract action, although the boundary line between tort and contract actions is not capable of clear demarcation. *Travelers Indem. & Co., Inc.*, 594 F.3d 238, 245 (3d Cir. 2010) (internal quotation marks and citations

---

[4] In support of Plaintiff's assertions in his Opposition that Defendant Kirsch fraudulently induced him to enter into the agreement with Corporate Defendants, he attaches an Affidavit dated January 3, 2022. (Opp'n. at 3 citing ECF No. 25-1.) The Affidavit spans six paragraphs and appears to be an attempt by Plaintiff to supplement the allegations of his Amended Complaint in response to the instant Motion to Dismiss. As Defendants point out in a Motion to Strike the Affidavit (ECF No. 30), this is improper. Plaintiff effectively withdraws the Affidavit in his opposition to the Motion to Strike, "Plaintiff will not contest the need to include the affidavit of the plaintiff Patrick Minella. . . ." (ECF No. 31 at 1.) Because it has been withdrawn, the Court has accorded no weight to the Affidavit and Defendants' Motion to Strike (ECF No. 30) will be DENIED AS MOOT.

omitted).  Under New Jersey law,[5] the economic loss doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases."  *Id.* at 244 (quoting *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453 (App Div. 2009)) (internal citations omitted).  "The purpose of the rule is to strike an equitable balance between countervailing public policies that exist in tort and contracts law."  *Dean*, 406 N.J. Super. at 470 (internal quotation marks and citation omitted).

Under New Jersey's economic loss rule, plaintiffs are barred from recovering purely economic losses in tort.  This is especially true where a plaintiff claims no personal injury or property damage.  *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 318 (2002). "Indeed, it is fundamental that a party's liability for breach should be governed strictly by the application of foreseeable damages stemming from the establishment of the contractual relationship.  To hold otherwise would chill business relations through the application of unforeseen damages upon one who may elect to effectively breach an agreement."  *International Minerals & Mining Corp. v. Citicorp North America, Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990).  As such, a plaintiff is barred from asserting a tort claim arising from a contractual relationship unless the breaching party owed a duty independent of the duties that arose under the contract.  *Saltiel,* 170 N.J. at 318.  Without an independent duty imposed by law, "mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." *Perkins v. Washington Mut., FSB*, 655 F.Supp.2d 463, 471 (D.N.J. 2009) (citing *Saltiel*, 170 N.J. at 316–17).

In deciding whether the economic loss doctrine applies, a court must focus on whether the plaintiff's entitlement to economic losses flows directly from obligations set forth in the contract.

---

[5] Based on the parties' briefing, they do not appear to dispute that New Jersey law governs this matter.  Accordingly, the Court applies only New Jersey law in this Opinion.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F.Supp.2d 668, 678 (D.N.J. 2009). "The critical issue in determining whether a tort claim can be asserted alongside a breach of contract claim is whether the allegedly tortious conduct is extraneous to the contract." *Valiant Consultants Inc v. FBA Support LLC*, Civ. No. 21-12047, 2022 WL 2803104, at *5 (D.N.J. July 8, 2022) (internal quotation marks omitted). For instance, the economic loss doctrine does not apply when a party uses misrepresentations to induce another into entering an agreement. *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.Supp.3d 449, 465 (D.N.J. 2020)

Here, Counts I and II of the Amended Complaint charge Defendants with Fraud and Conversion. (*See* Am. Compl. ¶¶ 28–35). Pursuant to the parties' revised oral contract, Defendants agreed Plaintiff would be paid certain percentages of the gross sales for certain types of products he sold. (Am. Compl. ¶ 14.) Plaintiff's fraud claim alleges that Defendants misrepresented their "false and understated" commissions that they paid to him were true and correct. (*Id*. ¶¶ 29–30). His conversion claim alleges that Defendants wrongfully retained commissions he was entitled to by "circumventing" him and "diverting purchase orders." (*Id.* ¶ 34.) As alleged, both of these claims are rooted solely and directly in Plaintiff's rights under the parties' agreement, which suggests they sound in contract rather than tort.

Plaintiff argues that because fraud and conversion claims are intentional torts, they are not barred by the economic loss doctrine. This is incorrect as a matter of law. Where, as here, a fraud alleged "is contained within the four corners of the contract, the plaintiff is prohibited from pursuing a separate tort claim." *G & F Graphic Services, Inc. v. Graphic Innovators, Inc.*, 18 F.Supp.3d 583, 591 (D.N.J. 2014) (quoting *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 219 F.Supp.2d 600, 607 (D.N.J. 2002)). A conversion claim is likewise barred. *See Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282, 308 (D.N.J. 2009).

Plaintiff is correct, in theory, that a claim for fraudulent inducement *into* an agreement has been held to be extraneous to a contract and thereby can avoid the economic loss doctrine. Nonetheless, the reality is that he has not pled such a claim, notwithstanding periodic, vague assertions to the contrary in his brief that were made without reference or citation to the Amended Complaint. (*See* Opp'n Br. at 3) ("At the very least, it is a reasonable conclusion to draw that the plaintiff was fraudulently induced to enter into a contractual relationship based on specific misrepresentations and false promises. . . .") ("Fraud in the inducement can be reasonably deduced from the allegations in the amended complaint."). It is not for the Court to either draw conclusions regarding or reasonably deduce Plaintiff's claims. The onus is on Plaintiff to plead a plausible claim, one with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, *678 (2009). Plaintiff separately argues that the parties' implied covenant of good faith and fair dealing supplies an extra-contractual duty that can support his tort claims. (Opp'n Br. at 6.) This is also incorrect. A duty of good faith and fair dealing is implied solely by virtue of a contract between parties, not separately imposed by law. A failure to meet contractual obligations encompassed by a contract, including the implied duty of good faith and fair dealing, is not actionable in tort. *See Perkins*, 655 F.Supp.2d at 471 (citing *Saltiel*, 170 N.J. at 316–17). Therefore, any implied duty of good faith and fair dealing between the parties in this case does not avoid the application of the economic loss doctrine.

With respect to Defendant Kirsch, Plaintiff baldly asserts that Defendant Kirsch cannot avail herself of the protection of the economic loss doctrine because she is not a party to the contract. Plaintiff argues it is "axiomatic that in order to invoke the economic loss rule, the party seeking protection of the rule must have had privity of contract with the other party." (Opp'n Br.

10

at 2.) Plaintiff, however, cites to no authority to support his assertion. The Court does not reach the issue of whether privity of contract is required to invoke the doctrine because the Amended Complaint itself alleges that Defendant Kirsch was a party to the agreement. For example, paragraph 17 refers to the "revised contract between Plaintiff and the defendants," paragraph 37 alleges that "Defendants are principals who had contracted with sales representatives . . . ," and paragraph 43 alleges that "[t]he conduct of the respective defendants constituted a breach of the revised oral contract entered into between the plaintiff and the defendants in December 2015 . . . ." (Am. Compl. ¶¶ 17, 37.) Insofar as it does not distinguish between Defendant Kirsch and Corporate Defendants, the Amended Complaint necessarily encompasses Defendant Kirsch. It also specifically names Defendant Kirsch among the defendants Plaintiff demands judgment against for Breach of Contract and the Covenant of Good Faith and Fair Dealing (Count IV). (*Id.* ¶ 45.) Accordingly, the Court rejects Plaintiff's assertion in his opposition brief that Defendant Kirsch is not a party to the agreement at issue and therefore cannot benefit from the protection of the economic loss doctrine.

For these reasons, the Court finds that the economic loss doctrine bars Plaintiff's claims for Fraud (Count I) and Conversion (Count II) as pled against Defendants. These claims will therefore be dismissed without prejudice.

   **C. Whether the Amended Complaint Adequately States Any Claims Against Defendant Kirsch**

Defendant Kirsch separately argues that the entirety of the Amended Complaint should be dismissed against her because it fails to state a claim against her individually pursuant to Fed. R. Civ. P. 12(b)(6). (Moving Br. at 4.) Defendant contends that she, as a corporate officer, cannot be held personally liable for the entity's non-tortious conduct, including violation of the New

Jersey Sales Representative Rights Act (Count III), Breach of Contract (Count IV), and Unjust Enrichment (Count V). (*Id.*)

Plaintiff argues that Defendants' request to dismiss the Amended Complaint as to Defendant Kirsch fails to have any basis in fact or law and must be denied. (Opp'n Br. at 7.) Plaintiff argues that the Amended Complaint pleads sufficient factual detail for the Court to conclude that plausible non-tort claims have been pled as to Defendant Kirsch. Defendants respond that the Amended Complaint identifies only actions Defendant Kirsch undertook as representative of or on behalf of Corporate Defendants. (Reply Br. at 6.) Thus, Plaintiff fails to identify any allegation that Defendant Kirsch acted in an individual capacity. (*Id.*)

Within certain limits, corporate officers are not liable for a corporation's acts. *Park Bank v. Remsen*, 158 U.S. 337, 344 (1895). One limit is the "participation theory," under which corporate officers may be liable where they have personally taken part in a tortious act. *North American Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 Fed.Appx. 176, 181 (D.N.J. 2013). The participation theory does not apply in the context of a breach of contract action, however "[u]nless the corporate officer extends promises in his individual capacity." *Lacroce v. M. Fortuna Roofing, Inc.*, Civ. No. 14-7329, 2017 WL 6342150, at *7 (D.N.J. Dec. 12, 2017) (quoting *Walsh v. Alarm Sec. Grp., Inc.*, 95 Fed.Appx. 399, 402 (3d Cir. 2004)).

Having carefully reviewed the Amended Complaint, the Court notes that it does identify actions Defendant Kirsch undertook as a representative of Corporate Defendants. *See* Am. Compl. ¶¶ 2, 9, 13–14, 21–23, 25–26. The only point at which the Amended Complaint specifies that Defendant Kirsch was acting "on behalf of herself and the defendants" was when she originally solicited Plaintiff to become an employee in 2012. (Am. Comp. ¶ 9.) Despite Plaintiff's arguments to the contrary in his brief, nowhere within the Amended Complaint does he allege that

Defendant Kirsch, in her personal capacity, took part in the actions underlying Plaintiff's claims for Violation of the New Jersey Sales Representative Rights Act (Count III), Breach of Contract and the Covenant of Good Faith and Fair Dealing (Count IV) or Unjust Enrichment (Count V). Accordingly, the Court finds that no plausible claims have been pled against Defendant Kirsch with respect to Counts III–V. These claims against her will be dismissed without prejudice. The Court recognizes that this is to some degree incongruous with its conclusion, above, that the Amended Complaint pleads Defendant Kirsch as a party to the 2015 agreement, but this is an unavoidable result of the lack of clarity in the current pleading.

## V.     CONCLUSION

For the reasons stated above, the Court will GRANT the Motion. It will DISMISS Counts I and II against all Defendants and DISMISS all Counts against Defendant Stacie Kirsch. These dismissals will be without prejudice. Defendants' Motion to Strike (ECF No. 30) will also be DENIED AS MOOT. An appropriate Order will follow.

Date: **September 19, 2022**

              s/ Zahid N. Quraishi              
              **ZAHID N. QURAISHI**
              **UNITED STATES DISTRICT JUDGE**