UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK MINELLA, <br><br> Plaintiff, <br><br> v. <br><br> ELECTRON MICROSCOPY SCIENCES, *et al.*, <br><br> Defendants. | Civ. Action No. 21-15906 (ZNQ) (RLS) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge**.

**PRESENTLY** before the Court is a Motion by Plaintiff Patrick Minella ("Plaintiff") seeking the Court to preclude Defendants Electron Microscopy Sciences ("EMS"), Summers Optical ("SO"), EMS Contract Packaging ("EMSCP"), EMS Acquisition Corp. ("EMSAC"), Diatome U.S. ("Diatome"), and Stacie Kirsch ("Kirsch") (collectively, "Defendants") from using a certain document in further proceedings in this matter (the "Motion").[1] (Doc. No. 119). Defendants oppose the Motion. (Doc. No. 120). The Court has fully considered the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rules 37.1 and 78.1. For the reasons set forth below, and for good cause shown, the Court **DENIES** Plaintiff's Motion.

---

[1] Plaintiff's Motion appears on the Court's Docket as a Motion to Amend/Correct, for Leave to Appear Amicus Curiae, and to Preclude Evidence in Violation of FRCP 26(e) and FRCP 37. (Doc. No. 119). The Motion itself is styled as a Motion to Bar Evidence. (Doc. No. 119).

I.     **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

As the parties are familiar with the background and procedural history of this case, the Court recites only those facts relevant to the present Motion.

This action arises out of Plaintiff's former affiliation with Defendants as a sales representative between 2012 and March 2020. (*See generally* Doc. No. 18).[2] Through his Amended Complaint, Plaintiff alleges that he was "an independent sales representative" on behalf of the defendant entities for their chemical, consumable, and equipment products and received commissions based on rates set through an oral agreement with Kirsch. (Doc. No. 18 at ¶¶ 14-18).[3] He further asserts that, after December 2015, Defendants would send him monthly payments for his commissions without "a detailed written accounting of all sales for his exclusive customer accounts[.]" (Doc. No. 18 at ¶ 19).

Plaintiff alleges that, in February 2020, he noticed his commission to have decreased from the same month in the prior year and sometime thereafter was informed by Kirsch that the defendant entities' product sales had decreased, causing "'financial trouble.'" (Doc. No. 18 at ¶ 21). According to Plaintiff, however, he later learned that Defendants were directly selling their products to Plaintiff's "exclusive account customers" and that sales were "as robust as ever." (Doc. No. 18 at ¶ 21). Plaintiff alleges that he then sought from Kirsch a sales report for his customer accounts for 2020, which she did not provide, and demanded the commissions he felt were being withheld. (Doc. No. 18 at ¶ 22). Shortly thereafter, on March 10, 2020, Plaintiff received a letter

---

[2] On November 16, 2021, Plaintiff filed his Amended Complaint. (Doc. No. 18). Shortly thereafter, Plaintiff's former counsel filed a letter with the Court, stating that certain allegations had been "inadvertently excluded" and advised that a corrected amended complaint would be filed by the next day. (Doc. No. 19). Plaintiff never filed any further amended pleadings nor sought leave to do so, making the November 16, 2021 Amended Complaint the operative pleading.

[3] Paragraph 16 of the Amended Complaint refers to an "Exhibit B" which is not annexed to the Amended Complaint. (Doc. No. 18 at ¶ 16).

regarding his "'decision to leave the company[,]'" which he denied having made, but considered to be a termination of "his independent contractor agreement[.]" (Doc. No. 18 at ¶ 25).

On July 20, 2021, Plaintiff initiated this action, which Defendants removed to this Court on August 23, 2021. (Doc. No. 1). Through the Amended Complaint, Plaintiff asserts claims of fraud, conversion, violation of the New Jersey Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1 *et seq.*, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (*See generally* Doc. No. 18). Plaintiff seeks to recover the alleged unpaid commissions and "a full accounting of all sales made to [Plaintiff]'s exclusive accounts by the defendants from December, 2015 through March, 2021[.]" (*See, e.g.*, Doc. No. 18 at ¶ 32c).

Through discovery, Plaintiff sought the production of documents showing the sales made by the defendant entities in his assigned territories for a six-year time period. (*See* Doc. No. 119-1 at ECF pp. 1-2; Doc. No. 120 at p. 1).[4] In response to that request, Defendants electronically searched their invoices and, on September 14, 2023, produced an Excel spreadsheet created by EMS's Chief Financial Officer that purported to provide the details of all invoices for Plaintiff's territories from 2015 through 2020 (the "Original Spreadsheet"). (*See* Doc. No. 119-1 at ECF p. 2; Doc. No. 120 at pp. 1-2; Doc. No. 120-2, Exhibit 2; Doc. No. 120-3, Exhibit 3, at 147:5-8; Doc. No. 120-4, Exhibit 4 (excerpt of the Original Spreadsheet)). The Original Spreadsheet contained 276,554 entries. (Doc. No. 120 at p. 2).

On August 24, 2023, the Court granted in part a motion to compel by Plaintiff, ordering Defendants to "produce all documents within their possession, custody, or control, within the

---

[4] The parties did not include any certifications or declarations attesting to the facts set forth in their respective legal memoranda or attesting to the authenticity of the exhibits each side annexed to their memoranda. Because the parties do not appear to challenge the veracity or authenticity of each other's presentation of facts or exhibits, the Court finds the unverified facts set forth herein to be uncontested for purposes of this Motion only.

relevant time period, including any invoices, that formed the basis for the information and entries within the Excel workbook that Defendants produced to Plaintiff," among other underlying data or documents relating to the sales at issue. (Doc. No. 67; *see also* Doc. No. 66). By way of letter dated October 6, 2023, Plaintiff's then-counsel reported that Defendants had served 12 boxes of information relating to the sales made in the relevant time period. (*See* Doc. No. 71). However, the parties continued to dispute various aspects of discovery, including documents and information underlying the data set forth in the Original Spreadsheet. (*See, e.g.*, Doc. Nos. 88, 89). Through those disputes, Defendants made available to Plaintiff's then-counsel the opportunity to review the underlying hard copy invoices (which were not stored electronically) at a mutually agreeable location. (*See* Doc. No. 84 at p. 4; Doc. No. 85-5, Exhibit E). However, Plaintiff's then-counsel stated that he "prefer[ed] a summary of the account sales which were excluded from [Plaintiff]'s commission calculations in his exclusive territories." (Doc. No. 85-5 at ECF p. 2).

Fact discovery ended on October 1, 2024, and the parties began expert discovery. To facilitate his experts' analysis, Plaintiff provided the Original Spreadsheet to his experts, who relied upon it to calculate the amount of commission Defendants allegedly owed to Plaintiff. (Doc. No. 119-1 at ECF p. 1; Doc. No. 120 at p. 2). On October 17, 2024, Plaintiff produced his expert report to Defendants. (Doc. No. 120 at p. 2). Although not submitted in connection with the Motion, Defendants proffer that Plaintiff's expert "used the [Original] Spreadsheet as a baseline, which was then modified by Plaintiff and some unknown person not employed by or associated with Plaintiff's disclosed experts, to calculate the amount of commissions Plaintiff was supposedly not paid." (Doc. No. 120 at p. 2).

Defendants' counsel proffers that, while preparing to depose Plaintiff's expert, they discovered that the Original Spreadsheet was overinclusive, containing 1,068 entries[5]—of the 276,554 total—that involved invoices outside of Plaintiff's territories or for products not sold by Defendants. (Doc. No. 120 at p. 2; Doc. No. 120-5, Exhibit 5). On January 29, 2025, approximately three and a half months after Plaintiff produced his expert report and approximately sixteen months after Defendants produced the Original Spreadsheet, Defendants' counsel notified Plaintiff's counsel of the purported errors and offered to remove the erroneous entries. (Doc. No. 120-5, Exhibit 5). Plaintiff's counsel responded that he would not issue a new expert report based on a corrected spreadsheet because doing so would be "unduly burdensome and prejudicial" to Plaintiff. (Doc. No. 120-6, Exhibit. 6). Nevertheless, on February 9, 2025, Defendants produced what they purported to be a corrected version of the Original Spreadsheet ("the Corrected Spreadsheet"), with 1,069 entries removed. (Doc. No. 120-7, Exhibit 7). According to Defendants, the removed entries comprise of approximately .004% of the total entries from the Original Spreadsheet.[6] (Doc. No. 120-9, Exhibit 9).

On February 13, 2025, Plaintiff filed the instant Motion.[7] (*See generally* Doc. No. 119). Through the Motion, Plaintiff seeks the Court to bar Defendants from using the Corrected Spreadsheet as "highly prejudicial 'newly created evidence[.]'" (Doc. No. 119-1 at ECF p. 2).

---

[5] In their brief, Defendants claim they removed 1,068 entries from the Original Spreadsheet. In an email to Plaintiff's counsel producing a corrected spreadsheet, Defendants claimed they removed 1,069 entries from the Original Spreadsheet. This discrepancy does not impact the Court's resolution of the Motion.

[6] The parties do not provide details as to the difference in total sales caused by the removal of those entries.

[7] Shortly thereafter, on February 26, 2025, Defendants produced to Plaintiff a spreadsheet showing the lines that were removed from the Original Spreadsheet. (Doc. No. 120-8, Exhibit 8). In response, Plaintiff's counsel reported that Plaintiff remained firm in its position and would proceed with his Motion. (Doc. No. 120-8, Exhibit 8). The parties have not supplied the Court with this spreadsheet in connection with the Motion.

5

Plaintiff argues that Defendants' production of this spreadsheet at this stage violates Rule 26(e) of the Federal Rules of Civil Procedure, triggering Rule 37(c)(1) of the Federal Rules of Civil Procedure.[8] (*See generally* Doc. No. 119-1). In essence, Plaintiff contends that Defendants substantially delayed revising the Original Spreadsheet over two years from its production. (Doc. No. 119-1 at ECF p. 5). Plaintiff points out that the Original Spreadsheet was used in connection with party depositions, including that of Defendant Kirsch, and is the central focus of Plaintiff's expert report, which was served in October 2024. (Doc. No. 119-1 at ECF p. 5). Plaintiff thus argues the late production of a modified spreadsheet unduly prejudices him in terms of the substance of his claims, as well as the time and costs that would need to be expended should the Court permit Defendants to use the Corrected Spreadsheet.

In opposing the Motion, Defendants argue that Plaintiff's motion to "bar evidence" is procedurally deficient as a premature motion *in limine* pursuant to Federal Rule of Evidence 403. (Doc. No. 120 at pp. 3-4). They further contend that they did not violate Rule 26(e)(2) and Rule 37(c) is inapplicable in the absence of a motion, hearing, or trial. (*See generally* Doc. No. 120). More specifically, Defendants claim that they timely "supplemented" the discovery by correcting the Original Spreadsheet. (Doc. No. 120 at pp. 4-5). They add that, because the removed entries are irrelevant to Plaintiff's claims, Plaintiff is not prejudiced as he would not have approached discovery differently and can proffer a revised expert report based on the Corrected Spreadsheet. (*See* Doc. No. 120 at pp. 6-7). Defendants also clarify that, while used in Kirsch's deposition,

---

[8] In Plaintiff's Notice of Motion, Plaintiff states he brings the Motion "pursuant to Federal Rules of Evidence, R. 403." (Doc. No. 119). However, Plaintiff proffers no arguments or case law in his memorandum as to Federal Rule of Evidence 403; rather, he relies solely on Rules 26(e) and 37(c) of the Federal Rules of Civil Procedure. (*See* Doc. No. 119-1). As such, the Court does not consider any arguments relating to Federal Rule of Evidence 403 in connection with this Motion as not fully raised and premature given the status of this matter. *See* Fed. R. Ev. 403.

Kirsch did not verify the accuracy of the Corrected Spreadsheet. (Doc. No. 120 at p. 7; *see* also Doc. No. 120-3, Exhibit 3). Therefore, according to Defendants, the facts presented do not warrant the imposition of sanctions under Rule 37. (*See* Doc. No. 120 at p. 6).

## II. LEGAL STANDARD

Pursuant to Rule 26(e), a party who has responded to requests for production must, "in a timely manner," supplement or correct their discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). A party's obligation to supplement extends to expert witness reports and deposition testimony. Fed. R. Civ. P. 26(e)(2). Supplementation aims to correct inaccuracies or to complete a response "based upon information that was not available at the time of the" original disclosure. *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 563 (D.N.J. 2022) (citations and internal quotation marks omitted). Supplementation, however, is not an opportunity "to produce information in a belated fashion." *Id.* (citations and internal quotation marks omitted).

The failure to properly supplement as required by Rule 26(e) precludes a party from using that information as "evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification can arise where it is reasonable to find "that the parties could differ as to whether the party was required to comply with the disclosure request." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-76 (M.D. Pa. 2022)). In considering whether to impose sanctions under Rule 37(c)(1), the Court must first determine if the failure to comply was substantially justified. *See id.* at 141.

Further, to determine any appropriate sanction for failure to comply with a discovery obligation, courts within the Third Circuit turn to a set of factors: "(1) the prejudice or surprise to the opposing party; (2) the ability of the opposing party to cure the prejudice; (3) the extent of disruption of the proceedings; and (4) bad faith or willfulness in failing to comply." *Sheehan v. Delaware & Hudson Ry. Co.*, 439 F. App'x 130, 132 (3d Cir. 2011) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*); *accord Nicholas v. Penn. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Ultimately, excluding evidence "is a severe sanction and is often inappropriate unless the failure to disclose or supplement is in bad faith or the resultant prejudice to the opposing party cannot be cured because, for example, use of the evidence is 'imminent or in progress[.]'" *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997). As such, the Court exercises discretion in determining whether and in what form to sanction a party. *See ABB Air Preheater, Inc. v. Regenerative Env't Equip. Co.*, 167 F.R.D. 668, 671 (D.N.J. 1996).

### III.  DISCUSSION

As a threshold matter, the Court considers Defendants' argument that Plaintiff's Motion is procedurally incorrect because no party is currently seeking to use the Corrected Spreadsheet "'on a motion, at a hearing, or at a trial.'" (Doc. No. 120 at p. 4 (quoting without attribution to Fed. R. Civ. P. 37(c)(1)). While Defendants are correct that, at this time, a party is not presenting the challenged spreadsheet in any of those instances, it is safe to assume that the parties intend to use either the Original Spreadsheet and/or the Corrected Spreadsheet in connection with a motion, hearing, or trial. Resolving the dispute at this stage is more efficient and promotes a swifter resolution of this matter, which has been at a halt during the pendency of this dispute. *See* Fed. R. Civ. P. 1.

The Court next turns to whether Defendants failed to meet their obligations pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. Supplementation under the Federal Rules of Civil Procedure requires a party to correct a disclosure it learns is materially incorrect or inaccurate. Fed. R. Civ. P. 26(e); *see also Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 629 (D.N.J. 2022) ("[S]upplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available the time of the" original disclosure.) (internal citation and quotation marks omitted). Here, Defendants' production of the Corrected Spreadsheet was an appropriate supplement to correct what they deem to be errors in the Original Spreadsheet. Notably, Plaintiff appears to challenge more the timing of the service of the Corrected Spreadsheet as opposed to its accuracy. While Plaintiff argues that the Corrected Spreadsheet is prejudicial to him, he does not identify any of the removed entries in the spreadsheet that he claims should have remained. (*See generally* Doc. No. 119-1). Thus, the fundamental issue here is whether Defendants' supplementation with the Corrected Spreadsheet was made "in a timely manner." Fed. R. Civ. P. 26(e).

Rule 26(e) requires supplementation to be made in a timely manner to preclude delayed production of information that was available at the time of production. *See Faiella*, 341 F.R.D. at 563; *see also Kimmel v. Mass. Bay Insur. Co.*, No. 21-12743, 2023 WL 8714336, at *6 (D.N.J. Dec. 15, 2023) ("A party cannot use Rule 26(e) to supplement a report with information available at the time she served the initial report."). Here, a representative of Defendants created the Original Spreadsheet before September 14, 2023, when Defendants produced the spreadsheet to Plaintiff. Although Plaintiff's counsel deposed Kirsch, Kirsch testified that she was unfamiliar with the document and its contents. (*See generally* Doc. No. 120-3, Exhibit 3). It does not appear that Plaintiff deposed the creator of the spreadsheet, and it is not clear whether Plaintiff's counsel took

the opportunity to review the underlying invoices as offered by Defendants' counsel. Fact discovery closed, and Plaintiff served his expert report. According to Defendants, Defendants' counsel learned of the overinclusive nature of the Original Spreadsheet on or around January 29, 2025, while preparing to depose Plaintiff's experts, and promptly informed Plaintiff's counsel. (*See* Doc. No. 120-5, Exhibit 5). Defendants then produced the Corrected Spreadsheet approximately 12 days thereafter, on February 9, 2025. (*See* Doc. No. 120-7, Exhibit 7).

While Defendants promptly disclosed the errors in the Original Spreadsheet upon discovery, Defendants could and should have reviewed the Original Spreadsheet long before to ascertain its accuracy. Indeed, it appears that even Plaintiff could have done so. Given the protracted discovery disputes raised in this matter, Defendants were well-aware of the importance of the data within the Original Spreadsheet and Plaintiff's continued efforts to seek as much information relating to the sales at issue. Because Defendants could have discovered the errors before expert discovery began, the Court finds that the supplementation was not timely made here. *See, e.g.*, *Faiella*, 341 F.R.D. at 563 (finding a corrected supplementation was not properly made where the producing party could have identified the information during the fact discovery period but did not do so).

Because the Court finds that Defendants did not comply with Rule 26(e), the Court next considers whether sanctions under Federal Rule of Civil Procedure 37(c)(1) are appropriate. In so doing, sanctions, including the preclusion of evidence, are not appropriate if the failure to comply with Rule 26(e) "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification is met if there is "a reasonable basis in law and fact" for the noncompliance. *Fitz*, 174 F.R.D. at 591 (internal quotation marks and citation omitted).

Here, Defendants justify the delayed supplementation on the fact that they were unaware of the errors until preparing for Plaintiff's expert depositions. Defendants point out that the cause of the over inclusiveness of the Original Spreadsheet derived in part from confusion over designations, such as "CA"—which counsel believed to designate California but actually designates Canada—and "DE"—which counsel believed to designate Delaware but actually designates Germany. (Doc. No. 120-5, Exhibit 5). Defendants' counsel also explains that entries for certain products were inadvertently included because the company that sold those products did not have a stand-alone billing system. (Doc. No. 120-5, Exhibit 5). Whether these inadvertent errors were made by the creator or lost in translation with counsel is unclear. However, considering the complexity of the nature of the businesses as well as the numerosity of invoices that had been filtered to create the Original Spreadsheet, the confusion is understandable. Perhaps, had counsel or the parties undertaken a closer review of the Original Spreadsheet and underlying invoices during fact discovery, the errors could have been identified earlier. Because neither side appears to have done so, it is reasonable that Defendants' closer analysis of the spreadsheet first arose in preparing for the expert's deposition. Under these circumstances, the Court finds that, while Defendants could have been more diligent sooner, the confusion within the Original Spreadsheet is objectively reasonable. As such, Defendants' failure to timely supplement their discovery with the Corrected Spreadsheet in this instance is substantially justified.

Having found the failure to timely supplement to be substantially justified, the exclusion of the Corrected Spreadsheet is not warranted. As such, while the Court need not consider whether the failure is harmless under the various applicable factors, those factors weigh against exclusion of the Corrected Spreadsheet. *See Grider*, 580 F.3d at 141.

First, the Court considers the prejudice or surprise to Plaintiff. *Sheehan*, 439 F. App'x at 132. Here, Plaintiff contends that he suffers prejudice from the "introduction" of the Corrected Spreadsheet because he used the Original Spreadsheet for depositions and as the "central focus" of his "costly expert report." (Doc. No. 119-1 at p. 5). However, through fact discovery, Plaintiff had the opportunity to review the invoices that formed the Original Spreadsheet and could have verified its contents as well. Moreover, Plaintiff did not depose the individual who created the Original Spreadsheet, even after being provided the identity and even after Kirsch testified to not having knowledge as to the spreadsheet. (*See* Doc. No. 120-3, Exhibit 3). As such, it is difficult for the Court to find that Plaintiff would be surprised if the Original Spreadsheet contained entries that may be outside the scope of the relevant sales.

As to prejudice, the Court agrees that Plaintiff is prejudiced by the late production of the Corrected Spreadsheet. Plaintiff expended time and money to have his experts rely upon overinclusive information. The loss of time and money is prejudicial. The extent of prejudice, however, is unclear as Plaintiff does not detail the cost, time, or efforts associated with the preparation and service of any amended expert report based on the Corrected Spreadsheet, nor does Plaintiff clarify if he would choose to do so in the event the Court were to deny his Motion. Further, it is not clear that any additional discovery, other than perhaps an amended expert report, would be necessitated by not excluding the Corrected Spreadsheet.

In addition, Plaintiff's reliance on *Steele v. Aramark Corp.* is misplaced as its facts are distinguishable from those presented here. (*See* Doc. No. 119-1 at ECF pp. 5-6). In *Steele*, the plaintiff produced an affidavit which alleged a new fact seven months after the close of fact discovery. *Steele v. Aramark Corp.*, No. 09-4340, 2012 WL 1067879, at *5 (D.N.J. Mar. 29, 2012), *on reconsideration in part*, 2012 WL 4103875, *rev'd in part, aff'd in part*, 535 F. App'x 137 (3d

Cir. 2013). The newly asserted fact was "very important" to Plaintiff's case, *id.* at *7, but one of which Plaintiff had knowledge of since the inception of the litigation and could have been included in discovery responses, *id.* at *6.

While the newly asserted fact in *Steele* was "dramatic" and "very important" to the issues presented, the same cannot be said for the Corrected Spreadsheet. While the data underlying the spreadsheet and the spreadsheet itself may be important to Plaintiff's claims, Defendants' unchallenged assertion that some of the entries should not have been included does not meaningfully alter the outcome of this litigation. Notably, the removed entries constituted a small percentage of the total number of entries on the spreadsheet. (Doc. No. 120-5, Exhibit 5). If those entries are irrelevant to Plaintiff's claims, then they are not "very important" to a resolution of the merits of this matter unlike the newly asserted fact in *Steele*.

Under the second factor, the Court considers Plaintiff's ability to cure the prejudice. *Sheehan*, 439 F. App'x at 132. Here, any prejudice to Plaintiff can be addressed by permitting Plaintiff leave to produce an amended, supplemental, or revised expert report to address the Corrected Spreadsheet. As noted above, the changes between the Original Spreadsheet and the Corrected Spreadsheet are not voluminous and Defendants have provided Plaintiff with a spreadsheet of the removed items. Thus, a review of the changes may not be a significant undertaking. In addition, permitting the Corrected Spreadsheet to become part of discovery at this stage does not prevent Plaintiff from challenging the propriety of the removed entries, which he has not done on this Motion, or even the authenticity, reliability, or admissibility of either spreadsheet in further proceedings. Accordingly, the Court finds that Plaintiff's ability to cure the prejudice caused by the Corrected Spreadsheet weighs against striking the spreadsheet for future proceedings.

Third, the Court must weigh the extent of any disruption that would result from not precluding the Corrected Spreadsheet. *Sheehan*, 439 F. App'x at 132. Here, the dispute over the Corrected Spreadsheet has disrupted expert discovery, causing significant delays. However, expert discovery has not closed and if, in fact, the entries removed from the Original Spreadsheet truly should not be included as part of the relevant sales, then resolution of the merits of this matter going forward would be better served through the presentation of accurate and reliable information. Moreover, the case had already suffered delays through the extensive factual discovery disputes raised by the parties. Accordingly, the Court does not find any further disruption to warrant such a harsh sanction as preclusion of the Corrected Spreadsheet.

Fourth, the Court considers whether Defendants willfully failed to comply or engaged in bad faith in doing so. *Sheehan*, 439 F. App'x at 132. Here, there is no indication that Defendants' untimely supplementation through the production of the Corrected Spreadsheet was done in bad faith or willfully. Accordingly, this factor also does not support preclusion of the Corrected Spreadsheet.

Because the Court finds that Defendants were substantially justified in their untimely supplementation, the harm or prejudice to Plaintiff can be cured, the balance of the relevant factors weigh against precluding the use of the Corrected Spreadsheet, and the Court's and parties' interests are better served through the presentation of accurate information, the Court **DENIES** Plaintiff's Motion. To be clear, the Court denies Plaintiff's Motion to the extent he seeks to bar the use of the Corrected Spreadsheet for failure to comply with Rule 26(e) of the Federal Rules of Civil Procedure. The Court, on the record presented in this Motion, makes no findings as to the admissibility of the Original Spreadsheet or the Corrected Spreadsheet nor as to propriety of the removal of the entries from the Original Spreadsheet.

## IV.   CONCLUSION

Accordingly, having fully considered the parties' submissions, and for the reasons set forth herein and for other good cause shown,

**IT IS** on this **3d** day of **September 2025**

**ORDERED** that Plaintiff's Motion to Bar the Corrected Spreadsheet (Doc. No. 119) is hereby **DENIED**; and it is further

**ORDERED** that Plaintiff is granted leave to supplement, amend, or revise his expert report(s).  The parties shall meet and confer and submit a joint proposed amended schedule for expert discovery by no later than **September 10, 2025**; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 119.

**SO ORDERED.**

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**

15